974 F.2d 1332
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Haider HOUMANI, Defendant-Appellant.
 No. 91-5803.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: February 20, 1992
Decided: September 1, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-90-460-A)
 Leonard R. Piotrowski, Fairfax, Virginia; Richard Paul Zipser, Richard Paul Zipser & Associates, P.C., Bloomfield Hills, Michigan, for Appellant.
 Kenneth E. Melson, United States Attorney, Christopher J. Supple, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 Affirmed.
 Before SPROUSE and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Haider Houmani was convicted by a jury of conspiracy to possess and distribute more than one kilogram of heroin (21 U.S.C. § 846 (1988)). He appeals his conviction and his sentence, and we affirm.
 
 
 2
 Houmani was first arrested in 1986 with Mustafa Rahal as he and Rahal tried to bring four kilograms of heroin into the country from Lebanon. The charges against Houmani were dropped after he apparently provided information about terrorist activity. In 1987, German authorities seized eight kilograms of heroin and made two arrests. Physical evidence at one of the apartments where the heroin was found implicated Houmani and information gathered by German authorities indicated that Houmani's daughter, Gada, had brought the heroin from Lebanon to Germany.
 
 
 3
 In 1989 and 1990, Houmani negotiated by phone and in person with a confidential informant and two Drug Enforcement Administration (DEA) agents posing as drug dealers in the Washington, D.C., area. Houmani told them that he was involved with an organization which was bringing heroin from Lebanon and that he would be able to supply four kilograms of heroin every forty-five days. He disclosed that his sources in Lebanon sometimes used a shipping company called IFCO to transport drugs concealed in containers labeled as foods. Shortly after Houmani confided this information in November 1989, the agents learned that 35.6 kilograms of heroin had been seized the month before in Puerto Rico from a ship en route from Lebanon. It had been hidden in jam jars labeled as IFCO products. While negotiations for substantial amounts of heroin continued, Houmani said he was having trouble with deliveries into the country, and was unable to make a sale. In late October 1990, Houmani called one of the DEA agents from Detroit to say he had eight kilograms on hand and the agent agreed to buy a kilogram if Houmani could deliver it to Washington. Dickering over this point continued until Houmani's arrest in November.
 
 
 4
 At his trial, Houmani objected to the admission of testimony about the thirty-five kilograms of heroin seized in Puerto Rico on the grounds that no connection to him had been shown, and that it should be excluded under Fed. R. Evid. 403 as relevant but more prejudicial than probative. On appeal, Houmani contends that the evidence was unrelated to the offense charged, that its admission should therefore be evaluated under Fed. R. Evid. 404(b) as a prior bad act, and that its admission was improper. We find no abuse of discretion in the admission of the testimony because the heroin seized in Puerto Rico was obviously related to the scheme Houmani was engaged in, and the relation was sufficiently established by his own statement that his organization used IFCO company containers to ship drugs.
 
 
 5
 Houmani also contests the use of the heroin seized in Germany and in Puerto Rico to calculate his sentence, alleging that only uncorroborated information from unidentified informants, too unreliable to be used, provided a link to him. However, in each instance, the information from unidentified foreign informants was corroborated. Houmani's name and the names of members of his family were on papers in one of the apartments in Germany where heroin was found and Houmani supplied the link to the drugs taken in Puerto Rico by explaining that his organization was using this method to transport heroin. The district court's finding that amounts seized in both places were relevant conduct* and should be used to calculate his sentence was not clearly erroneous.
 
 
 6
 Last, Houmani maintains that the district court clearly erred in finding that he was a leader in an offense involving more than five people, thus adding four levels to his base offense level. U.S.S.G. § 3B1.1(a). He argues that the district court listed a number of people as participants for whom there is no evidence or unreliable evidence of involvement. However, on the information before it, the district court could find by a preponderance of the evidence that, at the least, Houmani, his daughter Gada, Mustafa Rahal, and two people working in Lebanon were involved in the conspiracy. Houmani's negotiations with the informant and the undercover agents also disclose that he was a leader rather than a low-level participant in the scheme, although his relationship to co-conspirators outside his family is not entirely clear. We find that the district court's factual determination concerning Houmani's role was not clearly erroneous.
 
 
 7
 We therefore affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 See United States Sentencing Commission, Guidelines Manual, § 1B1.3(a)(1), comment. (n.1) (Nov. 1990)